IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CLAUDE SLEDGE, III, | ) | 4:09CV3090 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| JOHN CLARKE, | ) | |
| | ) | |
| Defendant. | ) | |

The plaintiff, Claude Sledge, III, claims that he was unlawfully searched and arrested by the defendant, John Clarke, a Lincoln police officer.[1]  Clarke has filed a motion for summary judgment, claiming qualified immunity.  I find after careful review of the parties' pleadings, affidavits, and briefs that the motion should be granted with respect to Sledge's claim that he was unlawfully arrested, but that it must be denied with respect to Sledge's claim that he was unlawfully searched by Clarke preceding the arrest.

## BACKGROUND

I am very familiar with the facts of this § 1983 action because I was also the district judge assigned to the federal criminal case that resulted from Sledge's arrest by Clarke and other Lincoln police officers in May 2005.  In addition to sentencing Sledge after he pleaded guilty to possession with intent to distribute crack cocaine, I conducted a *de novo* review of Sledge's motion to suppress the use of evidence that

---

[1] Sledge also alleges that Clarke unlawfully detained him prior to the search and arrest, and provided false testimony at a suppression hearing that was held in connection with the resulting criminal case.  Since the filing of Clarke's motion for summary judgment, however, Sledge has moved to dismiss these two claims.  The motion to dismiss (filing 28) will be granted.

was seized incident to his arrest.  Although there was insufficient evidence to prove that Clarke's actions in detaining Sledge and subjecting him to a pat-down search were lawful, the motion to suppress was denied.

### *Denial of Motion to Suppress*

I concluded in a lengthy opinion, and the Court of Appeals agreed, that Sledge forfeited any Fourth Amendment protection when he attempted to run away before Clarke completed the pat-down search, thus creating probable cause to arrest him for obstructing a peace officer, in violation of Neb. Rev. Stat. § 28-906(1).[2]  *See United States v. Sledge,* No. 4:05CR3072, 2005 WL 2347247 (D.Neb. Sept. 26, 2005), *aff'd,* 460 F.3d 963 (8th Cir. 2006), *cert. denied,* 549 U.S. 1297 (2007).  The Eighth Circuit also found there was probable cause to arrest Sledge for resisting arrest, in violation of Neb. Rev. Stat. § 28-904, because Sledge was seized by one of the officers before he attempted to flee and he struggled with the officers after being caught.  *See Sledge, 460 F.3d at 968.*  Sledge was handcuffed and searched, and crack cocaine was found in his pants pockets.  This evidence was ruled admissible because is it was discovered during a search conducted incident to a lawful arrest.

As summarized by the Court of Appeals, the facts surrounding Sledge's arrest were as follows:

> On May 5, 2005, Lincoln (Nebraska) Police Department (LPD) Officer Robert Smith (Officer Smith) was conducting surveillance of a liquor store from his police cruiser, which was located in a used car lot near the store. Around 12:15 a.m., Officer Smith observed a car pull into

---

[2] I noted in my opinion that while it was likely Officer Clarke was relying upon two Lincoln municipal ordinances when he arrested Sledge for "failing to comply and resisting arrest", these ordinances had not been introduced into evidence and could not be judicially noticed.  *See Sledge,* 2005 WL 2347247 at *12.  A supplemental index of evidence filed by Clarke in the present action (filing 32) includes these ordinances.

the liquor store's front parking lot. Officer Smith saw a young man, who appeared to be "in his early 20s or close to 20," exit the car's front passenger seat and enter the liquor store.

While the young man was inside the liquor store, another car arrived at the store parking lot and parked two stalls to the right of the first car. The young man exited the store shortly after entering and returned to the first car empty-handed. The second car's driver, later identified as Tetus Therien (Therien), then walked over to the first car's passenger side. Officer Smith observed Therien engage in a conversation and shake hands with, or possibly take "money or something" from, someone sitting in the first car. Therien then entered the liquor store and, a short time later, exited the store carrying what appeared to be an eighteen-pack of beer. Following another brief "hand-exchange," Therien handed the beer inside the first car's open right rear passenger door and returned to the second car.

Believing he had just witnessed the illegal procurement of alcohol for a minor, Officer Smith drove his cruiser across the street and parked behind the first car, preventing it from leaving. Officer Smith approached the open passenger side window of the first car and asked the driver, nineteen-year-old Jennifer Carriker (Carriker), for her identification. Upon doing so, Officer Smith recognized Sledge and another man, Fred Baxter (Baxter), sitting in the car's back seat. Officer Smith had arrested both men on earlier occasions, and recalled LPD had active broadcasts on them for unrelated violations, which Officer Smith confirmed by police radio. [Footnote 2: LPD had two active broadcasts concerning Sledge: (1) a broadcast to issue a citation to Sledge for possession of marijuana, a misdemeanor infraction; and (2) a broadcast to interview Sledge regarding a disturbance.] Officer Smith radioed for assistance, and within minutes five additional officers arrived at the scene, including LPD Officers John Clarke (Officer Clarke) and Kocian (Officer Kocian).

After instructing Baxter to exit the car to talk about a broadcast regarding Baxter, Officer Smith directed Officer Clarke to stand near the car's left rear door in case Sledge attempted to get out and run. While talking to Baxter, Officer Smith heard Officer Clarke ask Sledge to get

out of the car. A few moments later, Officer Smith saw Officer Clarke begin a pat-down search on Sledge, who had his back toward Officer Clarke. Officer Smith then observed Sledge "turn to try and run away, and Officer Clarke grabbed him," resulting in a struggle between Officer Clarke, Officer Kocian, and Sledge. A third officer ran over, and the four individuals fell to the ground. When the officers returned Sledge to a standing position, he was handcuffed.

The officers placed Sledge under arrest for failing to comply and for resisting arrest. While searching Sledge incident to the arrest, officers located in Sledge's left front pants pocket $229 in cash and two baggies containing an off-white substance, and located a similar baggie containing an off-white substance in Sledge's right front pants pocket. The substances field-tested positive for cocaine base (crack cocaine).

*Sledge*, 460 F.3d at 964-65.

During the suppression hearing, Officer Clarke testified he was familiar with Sledge from earlier contacts, and given Sledge's history of verbal and physical resistive behavior, Officer Clarke was concerned Sledge may become violent during the encounter in May 2005. Officer Clarke also testified Sledge became angry when informed the officers needed to talk to Sledge about his broadcasts. Officer Clarke asked if he could pat Sledge down, and Sledge responded in the affirmative. Sledge initially complied with Officer Clarke's request to turn around and to put his hands up. However, once Officer Clarke began the pat down, Sledge "threw his arms down." Officer Clarke again asked Sledge to raise his hands, which Sledge initially did, but Sledge put his arms down again. Officer Kocian then grabbed Sledge. Sledge started "twitching and moving and keeping his left arm down," and then "took off running." According to Officer Clarke, Sledge ran approximately five yards before he was apprehended, taken to the ground, handcuffed, and placed under arrest.

In contrast, Sledge testified Officer Clarke did not ask permission to conduct the pat-down search, but simply ordered Sledge to turn around. Sledge also testified Officer Clarke began digging in Sledge's left front pants pocket after the pat down and began questioning Sledge

-4-

about how much money he had. Sledge told Officer Clarke to stop digging in his pocket and then "brushed" Officer Clarke's hand and tried to get away from him, at which time Sledge was taken to the ground.

Additionally, Carriker testified she did not hear Officer Clarke ask Sledge for consent to the pat-down search. Carriker further testified: (1) after the pat-down search began, Sledge's arms "moved down as if he was uncomfortable with it, and the officers were telling him to put his arms back up"; (2) the officers "were being very aggressive"; (3) Sledge tried to get away from the officers, but only took two or three steps before the officers took him to the ground; and (4) Sledge attempted to get away from the officers twice.

*Sledge*, 460 F.3d at 965.

The record demonstrates, while Officer Clarke attempted to pat down Sledge, Officer Kocian grabbed Sledge. This action constituted an actual seizure of Sledge's person, or, in other words, an arrest.[3]

*Sledge*, 460 F.3d at 967.

I found that even if Sledge had consented to a pat-down search, the consent was effectively withdrawn the first time he lowered his arms:

[I]t is clear from the evidence that any consent Mr. Sledge may have given, either verbally or by his actions in turning around and raising him arms in response to a search request, was effectively withdrawn a short time later. Withdrawal of consent need not be effectuated through particular "magic words," but an intent to withdraw consent must be made by unequivocal act or statement. *United States v. Gray*, 369 F.3d 1024, 1026 (8th Cir.2004). Officer Clarke testified that he understood

---

[3] Clarke testified on cross-examination, after reviewing a report of the incident, that Officer Kocian grabbed Sledge when he put his arms down the second time and while Clarke was threatening to handcuff him. *Sledge,* 2005 WL 2347247 at *7. Like the Court of Appeals, I found that Sledge "was under arrest when he attempted to run away from the officers." *Id.* at *17.

-5-

the first time Mr. Sledge put his arms down that he did not want to be searched, but Officer Clarke continued with the search anyway. After the second time Mr. Sledge dropped his arms, Officer Clarke threatened him with arrest if he did not comply.

*Sledge,* 2005 WL 2347247 at *11. I could not find any evidence that Clarke frisked Sledge for safety reasons before his arrest:

> Officer Clarke testified that he only began to wonder whether Mr. Sledge had a handgun after he put his arms down a second time. He articulated no particular reason for this fear, other than the fact that Mr. Sledge was noncompliant during the pat-down search. Officer Clarke also expressed a general concern that Mr. Sledge had a gang indicator on his police file and a history of resistive behavior, but he did not state that Mr. Sledge was considered dangerous or was known to carry weapons. Neither of the police broadcasts for which Mr. Sledge was being detained involved serious crimes.

*Id.* at *12 (footnote omitted). I therefore concluded that "the attempted pat-down search violated the Fourth Amendment regardless of whether the detention was lawful." *Id.*

### Supporting and Opposing Affidavits

Both parties have designated Clarke's testimony as evidence to be considered in connection with the summary judgment motion,[4] and each party has submitted a

---

[4] However, Sledge objects that "[t]he transcript of Clarke's previous testimony offered by him in support of his motion constitutes hearsay under Rule 801 of the Federal Rules of Evidence" and should not be considered "[e]xcept for statements contained in the transcript offered by Plaintiff as admissions [of] a party opponent pursuant to Rule 801(d)(2)." (Filing 29, at 7.) While the testimony technically may be hearsay, this does not prevent its consideration on a motion for summary judgment; the transcript is equivalent to an affidavit. *See Brown v. Muhlenberg Tp.,* 269 F.3d 205, 212 n. 5 (3rd Cir. 2001) (authenticated transcript of sworn testimony satisfied all requirements of Federal Rule of Civil Procedure 56(e)).

personal affidavit recounting the events of May 5, 2005.  Sledge has also submitted the affidavit of Jennifer Carriker.

Clarke states in his affidavit:

1.      I am a Police Officer for the Lincoln Police Department and have held that position at all times relevant hereto.

2.      I was acting within the scope of my employment with the City of Lincoln at all times material to this action.

3.      I was on duty in police uniform with my badge visible at all times material to this action.

4.      During the early morning hours of May 5, 2005, I engaged in the investigative detention and subsequent arrest of Plaintiff Claude Sledge, III.

5.      Plaintiff was present in a parking lot outside N Street Drive-In Liquor located at or near 19th and N Street in Lincoln, Nebraska.

6.      Upon arrival at that location and after conferring with another Lincoln police officer, I was informed by Channel 50 that Plaintiff had two broadcasts.

7.      I asked Plaintiff to step out the vehicle he was sitting in at N Street liquor store, and Plaintiff complied with my request to step out [of] the vehicle.

8.      I took Plaintiff aside and advised him that he had two broadcasts for criminal violations that needed to be taken care of, one which involved my need to cite him for possession of illegal drugs.

9.      Due to Plaintiff's anger after his notification of these

-7-

broadcasts,[5] I asked Plaintiff for permission to pat him down for weapons, to which he consented.[6]

       10.    After consenting, he was instructed by me to turn away from me and put his hands up in the air, to which he complied.

       11.    I began the pat-down search for weapons and when I got to Plaintiff's waist, he put his hands down, at which time I asked him to put them back up so I could complete the pat-down search, to which he complied.

---

[5] Clarke indicates in the statement of material facts in his brief in support of the motion for summary judgment that he also asked permission to conduct a pat-down search due to "his knowledge of gang affiliations." (Filing 27, p. 2, ¶10.) In support of this statement, he cites a portion of his testimony where he was asked, "Was there anything about Claude Sledge in his record or his past history that gave you cause for concern?" (Transcript ("Tr.") 68:11-13 (filing 26-3, at 17).) Clarke answered: "Yes. Claude has a -- according to our computers, a gang indicator. It's a G flag is what we call it. And due to other contracts I've had with Claude, I've seen his resistive behavior. His verbal and actual physical resistive behavior in past incidents that I've been involved in and I've heard from other officers." (Tr. 68:14-20.) This testimony does not indicate directly that Sledge's gang affiliation played a part in Clarke's decision to  conduct a pat-down search.

[6] Sledge "denies that he consented to a pat-search and believes Clarke did not act based upon Plaintiff's demeanor or supposed gang affiliations. (Ex. 5 [Affidavit of Claude Sledge (filing 30-2)], para. 5,6)." He states: "Clarke previously testified he had no safety concerns until Plaintiff lowered his arms just prior to being arrested and has admitted the search was not 'based on anything that happened in the past.' (Ex. 5, Attach. A [Transcript (filing 30-2, pp. 5-47)], 66:17-25, 94:20-22). Clarke's narrative police summary of the incident also reports a consensual pat-search. (Ex. 5, Attach. A, 74:25-76:14, Attach. B [filing 30-2, pp. 48-50]). This is consistent with other portions of his previous testimony, establishing Plaintiff had not attempted to assault or verbally threaten Clarke (Ex. 5, Attach. A, 92:12-20) as well as the absence of any evidence there had been a disturbance; that Plaintiff might be armed; or that officers observed anything appearing to be a weapon." (Filing 29, at 2-3.)

12.   I renewed the pat-down search after he raised his arms again, and he again put his hands down when my hands neared his waist.

13.   Shortly after these attempts to complete the pat down, Plaintiff took off on foot and fled from me and other police officers.

14.   Since I had not finished with the issuance of the citation and my investigative detention of Plaintiff, he was chased by me and other police officers whereupon he was captured and immediately handcuffed. He was placed under arrest for not only the broadcast involving the prior narcotics offense but also for resisting arrest and the charge of failure to comply, of which the latter charges were in violation of [the] Lincoln Municipal Code.[7]

15.   After Plaintiff's arrest on the aforementioned charges, a search incident to arrest revealed that Plaintiff had in his possession in his pockets baggies of what was later determined to be crack cocaine.

16.   Plaintiff did not protest to my pat down for weapons.[8]

(Filing 26-2, at 1-2.)

Sledge states in his affidavit:

---

[7] Sledge denies that he "'took off on foot' or 'fled' from the officers. (Ex. 5, para. 8)." (Filing 29, at 3.) Sledge claims that "[w]hen [he] again lowered his arms, Clarke tackled him and another officer tackled and arrested him for failure to comply so that Clarke could find out what he had in his pockets. (Defendant's Answer, Filing 14, para. 11; Ex. 5, para. 8, 9). Defendant and Officer Kocian grabbed Plaintiff before Plaintiff made any effort to run. (Ex. 5, para. 8, Attach. A, 92:6-11)." (*Id.*)

[8] Sledge claims that he "repeatedly protested the search of his person, attempting to physically keep Clarke's hands from his pockets, asking if he was under arrest, and telling Clarke he was not supposed to be digging in his pockets. (Ex. 5, para. 6,7,8). For his protest, he was arrested. (Ex. 5, para. 8). Clarke admits he arrested Plaintiff for failing to comply with his commands to put his arms up and allow the search. (Ex. 5, Attach. A, 71:4- 15)." (Filing 29, at 4.)

-9-

1.      I am the Plaintiff herein.  Unless otherwise stated, I have personal knowledge of the following facts.

2.      On May 5, 2005, I was thirty-two years of age. My appearance was consistent with my age.  Along with three others, I traveled in a car to N Street Liquor near downtown Lincoln, Nebraska. Jennifer Carriker was driving, her boyfriend John Brown was the front passenger, and Fred Baxter and I were in the back seat. I was on the driver's side and Baxter was on the passenger side.

3.      While there, one or two police cruisers pulled into the lot behind the vehicle. The position of the police vehicles made it impossible for us to leave the liquor store in the car they arrived in.

4.      After officers talked to others present, Officer Clarke, the Defendant in this case, said something like "Step from the car please." I complied but asked why he had to get out of the car.

5.      After I got out, I was made to wait in the presence of the officers while Clarke made a radio call to see if I had broadcasts.  After that, Clarke told me I had a broadcast, told me to turn around, asked me if I had any weapons, guns, or knives, and started pat searching me.

6.      Before pat-searching me, Officer Clarke did not request my permission or ask my consent.  I did not give my permission or consent. I asked him if I was under arrest and he said "No."  I turned around because he told me to.

7.      As he continued to search me, he started digging in my pocket and asking how much money I had.  I tried to move away from him and put my arms down to move his hands away from my pockets. I also told him he was not supposed to be digging in my pockets.

8.      When I did these things, Officer Clarke told me to put my hands up and allow the search or he would arrest me for failing to comply.  Clarke than continued to search me, again going for the pocket. When I moved his hand away from my pocket again, he and another officer took me down and placed me under arrest.  I did not run or

-10-

attempt to flee at any time prior to Clarke and another officer tackling me during the course of the search. Other than verbal protests and lowering my arms and attempting, in a non-threatening manner, to keep Clarke's hands from my pockets, I did not threaten or assault the officers, or resist the officers' actions in any way, prior to them tackling me during the course of the search.

(Filing 30-2, at 1-3.)

Jennifer Carriker states in her affidavit:

1.     I have personal knowledge of the facts stated herein.

2.     I was present on May 5, 2005, when officers approached our vehicle after I had parked at N Street Liquor, in Lincoln, Nebraska.

3.     My then boyfriend, John Brown, was in the front passenger seat. Claude Sledge was in the back seat on the driver's side and Fred Baxter was in the back seat on the passenger side. I was still in the driver's seat and remained there throughout the events ending in the officers arresting Sledge. From this position, I observed Sledge and the officer, John Clark[e], throughout much of their contact with one another.

4.     Officer Clark[e] approached Sledge while he was still seated in the backseat and asked him to step from the vehicle. Sledge complied with the request but asked why he had to.

5.     After Sledge stepped out, he and Officer Clark[e] stood near the driver's side of my vehicle. Another officer was also present near Sledge and Clark[e].

6.     During the contact outside the vehicle, the officers were acting very aggressively and unfriendly.

7.     Sledge was unhappy and uncomfortable throughout the contact and was especially uncomfortable when the officers were

-11-

touching him.[9]

8.     I never heard the officer ask for permission to pat-search. I never heard Sledge give the officer permission to search him. Though I did not hear everything, I am 100 percent positive Sledge did not consent to the search.[10]

9.     While the officer was searching Sledge, he would put his arms down as if he was uncomfortable with the search. In response, I heard Clark[e] say many things, including, "Put your arms back up," "Keep your hands up," "Don't resist," "What are you hiding?" "What do you have in your pockets? "Why are you resisting?" The officer was yelling at Sledge.[11]

10.    During the contact, the officers were being very cluttering of Sledge and not giving him his space.

(Filing 30-3, at 1-2.)

_____

[9] Clarke objects to this statement "to a limited extent, as Ms. Carriker would not have personal knowledge of Plaintiff's feelings of unhappiness or discomfort but could only speculate based on his facial expression or body language; only Plaintiff could testify to his own feelings." (Filing 31, at 2.)  Carriker is permitted to state her perception of Sledge's mood or physical condition.

[10] Clarke objects that "Ms. Carriker does not have personal knowledge and is incompetent to testify due to lack of perception of the events because she admits she did not hear everything that was said, obviously due to her position in the vehicle and the other events occurring around her. Any statements by Ms. Carriker that Plaintiff did not give permission of the search are therefore not admissible." (Filing 31, at 2.) This objection is sustained with respect to the final sentence of paragraph 8 of Carriker's affidavit, but is otherwise overruled.

[11] Clarke again objects that "Ms. Carriker does not have personal knowledge and is incompetent to testify due to lack of perception of the events because she admits she did not hear everything that was said, obviously due to her position in the vehicle and the other events occurring around her."  This objection is overruled.

## *DISCUSSION*

Summary judgment is appropriate if the evidence "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the burden of making this showing, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the party opposing the motion "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The Supreme Court has made clear that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Halbach v. Great-West Life & Annuity Ins. Co.*, 561 F.3d 872, 881-82 (8th Cir. 2009) (quoting *Anderson*, 477 U.S. at 249).

Qualified immunity protects individual state actors from liability under § 1983 unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *C.N. v. Willmar Public Schools, Independent School Dist. No. 347*, ___ F.3d ___, 2010 WL 27047, at *5 (8th Cir. 2010) (quoting *Brockinton v. City of Sherwood*, 503 F.3d 667, 671 (8th Cir.2007)). This defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Akins v. Epperly*, 588 F.3d 1178, ___, 2009 WL 4877607, at *3 (8th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Qualified immunity requires a two-part inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If no reasonable factfinder could answer yes to both of these questions, the officer is entitled to qualified immunity. *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009). Courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Akins*, 2009 WL 4877607, at *3 (citing *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009)).

-13-

"Whether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law. But if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment." *Wimbley v. Cashion*, 588 F.3d 959, 961 (8th Cir. 2009) (quoting *Olson v. Bloomberg*, 339 F.3d 730, 735 (8th Cir.2003))

### *Unlawful Search Claim*

It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967).   One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.  *Id.*  Another is the "stop and frisk" exception, the scope of which was first defined by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968).  *See Kolender v. Lawson*, 461 U.S. 352, 363 (1983).  Clarke argues that both of these exceptions justified his pat-down search of Sledge.[12]

In his affidavit, Clarke states:  "Due to Plaintiff's anger . . . I asked Plaintiff for permission to pat him down for weapons, to which he consented."  (Filing 26-2, ¶ 9.)  Clarke does not describe how Sledge indicated his consent to the search,[13] but states

_____

[12] Even though I determined in ruling on Sledge's motion to suppress that the pat-down search was unlawful, that determination does not preclude a finding that Clarke is entitled to qualified immunity.  *See Turpin v. County of Rock*, 262 F.3d 779, 782-83 (8th Cir. 2001) (ruling on motion to suppress did not have preclusive effect in subsequent § 1983 action since defendant police officers were neither parties nor in privity with the prosecution in the criminal action and did not have full and fair opportunity to litigate issues in the criminal action).

[13] Clarke testified at the suppression hearing that he asked Sledge "if I could pat him down," and Sledge answered, "Yes, I could." (Tr. 63:13-18.)

that "[a]ter consenting, [Sledge] was instructed by me to turn away from me and put his hands up in the air, to which he complied." (*Id.*, ¶ 10.) Sledge denies that consent was requested by Clarke. He states: "Before pat-searching me, Officer Clarke did not request my permission or ask my consent. I did not give my permission or consent. . . . I turned around because he told me to." (Filing 30-2, ¶ 6.) Clarke also states that after Sledge put his hands down the first time, "I asked him to put them back up so I could complete the pat-down search, to which he complied." (Filing 26-2, ¶ 11.) Sledge states that when he put his hand down he told Clarke "he was not supposed to be digging in my pockets." (Filing 30-2, ¶ 7.) He also states that "[w]hen I did these things, Officer Clarke told me to put my hands up and allow the search or he would arrest me for failing to comply." (*Id.*, ¶ 8.) Clarke testified at the suppression hearing that Sledge "was being noncompliant" when he put his hands down, and admitted that this action "indicate[d] that he didn't want [Clarke] to pat him down." (Filing 26-3, at 32.) Clarke agreed "[Sledge] was indicating that he didn't want him to continue [his] search." (*Id.*, at 43.) Clarke also testified that when Sledge put his hands down a second time, Clarke "told him that he needed to stop doing what he was doing" or he would be placed under arrest. (*Id.*, at 34.) As noted above, Sledge states that he was threatened with arrest the first time he put his hands down.

I find there is a genuine dispute concerning predicate facts material to the issue of whether it was objectively reasonable for Clarke to conclude, as claimed in his brief, that "[d]uring the entire pat-down, Plaintiff consented to the search." (Filing 27, at 8.) Summary judgment thus cannot be entered on this basis. I next consider whether Clarke might reasonably have concluded that a non-consensual search for weapons was authorized.

An officer may frisk a suspect for the protection of himself or others nearby to discover weapons if "he has a reasonable, articulable suspicion that the [suspect] may be armed and presently dangerous." *United States v. Banks*, 553 F.3d 1101, 1105 (8th Cir. 2009) (quoting *United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir. 2002)). Courts are required to apply an objective test to resolve the question whether

-15-

reasonable, articulable suspicion justified a protective search. *Id.* Under this objective test the "officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* (quoting *Terry*, 392 U.S. at 27).

Clarke argues that the pat-down was justified because of "the escalation of the situation by Plaintiff and Officer Clarke's knowledge of Plaintiff's previous drug dealings and gang affiliations." (Filing 27, at 8-9.)  From the evidence presented, it appears the only knowledge that Clarke had of Sledge's "drug dealings" was the broadcast directing that Sledge be issued a citation for possession of marijuana, a misdemeanor infraction under Nebraska law.  There is no evidence the officers had any reason to suspect that Sledge or the other occupants of the vehicle were engaged in a drug transaction instead of purchasing beer.  Clarke also learned from the broadcast that Sledge had a "gang indicator" or "G flag" (Tr. 68:14-15), but there is no evidence this designation was intended to signify to police officers that Sledge might be armed and dangerous.  Clarke states in his incident report that "a G indicator . . . basically means that they could possibly be associated with a gang or at one time had been associated with a gang." (Filing 30-2, at 49.)  Even if Sledge was angry at being ticketed for the past marijuana offense, the "G flag" did not furnish reasonable suspicion for a pat-down search.

### *Unlawful Arrest Claim*

"It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir.2005) (quoting *Hannah v. City of Overland*, 795 F.2d 1385, 1389 (8th Cir. 1986)). Because the qualified immunity privilege extends to a police officer who is wrong, so long as he is reasonable, the governing standard for a Fourth Amendment unlawful arrest claim "is not probable cause in fact but arguable probable cause . . . that is, whether the

officer should have known that the arrest violated plaintiff's clearly established right." *Id.* (quoting *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996)).

I have previously held, and the Court of Appeals has affirmed, that Clarke had probable cause to arrest Sledge. This holding precludes Sledge from suing Clarke for unlawful arrest. Collateral estoppel, or issue preclusion, is appropriate when:

> (1) the issue sought to be precluded is identical to the issue previously decided; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action.

*Irving v. Dormire*, 586 F.3d 645, 648 (8th Cir. 2009).

Each of these four requirements is satisfied here: (1) The finding of probable cause necessarily means that Clarke had arguable probable cause to arrest Sledge. (2) After judgment was entered, Sledge unsuccessfully appealed the denial of the motion to suppress. (3) Sledge was the defendant in the criminal case. (4) The court conducted an evidentiary hearing on the motion to suppress, during which Sledge, through his attorney, was permitted to cross-examine Officers Smith and Clarke. Sledge also testified at this hearing, as did Jennifer Carriker.

Sledge further claims that Clarke violated his right to substantive due process by "unreasonably and unlawfully arrest[ing] Plaintiff for attempting to exercise his right to be free of the unlawful and unreasonable search of his person[.]" [14] (Amended

---

[14] Sledge's unlawful arrest claim cannot also be analyzed as a substantive due process claim because "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacremento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

complaint (filing 3), ¶ 23.)  Sledge argues that the collateral estoppel doctrine does not bar this claim because "the final judgment [in the criminal case], at best, decided only [that] the officers had probable cause to arrest Plaintiff for resisting the initial unlawful arrest."[15]   (Filing 29, at 11, n.6.)  It is Sledge's contention that Clarke instead "arrested him for refusing to allow the search."  (*Id.*)

Even if Clarke decided to arrest Sledge for objecting to an unlawful pat-down search, he is still entitled to qualified immunity because he had arguable probable cause to arrest Sledge for other crimes.  An officer's subjective intent is never relevant under a Fourth Amendment analysis, so long as an objective basis for the seizure exists.  *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005) (citing *Saucier*, 533 U.S. at 210).

In the criminal case, I specifically determined there was probable cause to arrest Sledge for violating Neb. Rev. Stat. § 28-906(1), which provides that "[a] person commits the offense of obstructing a peace officer, when, by using or threatening to use violence, force, physical interference, or obstacle, he or she intentionally obstructs, impairs, or hinders . . . the enforcement of a penal law or the preservation of the peace by a peace officer or judge acting under color of his or her official authority . . .."  After noting that "the Nebraska Court of Appeals relied upon this statute in *State v. Brooks*, 5 Neb.App. 463, 560 N.W.2d 180 (Neb.App.1997), to uphold an arrest and search that occurred under circumstances quite similar to the present case," I explained:

---

[15] As discussed above, the Eighth Circuit actually made this determination.  I had concluded there was insufficient evidence to find probable cause that Sledge was resisting arrest in violation of Neb. Rev. Stat. § 28-904, because this statute requires the use or threatened use of physical force or violence.  "Nonviolent refusal to submit to arrest and other minor forms of resistance, such as running from a police officer, are not criminal under § 28-904.  *See State v. Hicks*, 225 Neb. 322, 404 N.W.2d 923, 925 (Neb. 1987) (per curiam)."  *Sledge*, 2005 WL 2347247, at *14.

The mere verbal refusal to provide information to an officer does not constitute an obstacle to the enforcement of the penal laws as contemplated by § 28-906. *State v. Owen*, 7 Neb.App. 153, 580 N.W.2d 566, 570-71 (Neb.App.1998); *State v. Yeutter*, 252 Neb. 857, 566 N.W.2d 387, 391 (Neb.1997). There must be some sort of physical act in order for a violation of this statute to occur. *Id.* For example, evidence showing that a defendant resisted handcuffing and struggled with an arresting officer will sustain a conviction under this statute. *See State v. Campbell*, 260 Neb. 1021, 620 N.W.2d 750, 757 (Neb.2001); *State v. Lynch,* 223 Neb. 849, 394 N.W.2d 651, 661 (Neb.1986). Under § 28-906, however, the use of force, or threatened use of force, is not always necessary. The mere act of running away from police constitutes a physical obstacle within meaning of § 28-906. *See In re Interest of Richter*, 226 Neb. 874, 415 N.W.2d 476, 478 (Neb.1987).

Because it is undisputed that Mr. Sledge tried to run away, the answer to the question of whether he lawfully could have been arrested for obstructing a peace officer depends solely upon whether the officers were engaged in "the enforcement of a penal law or the preservation of the peace." . . . The evidence does not support a finding that Mr. Sledge was disturbing the peace prior to being tackled and handcuffed by the police, but the officers clearly were engaged in the enforcement of a penal law when they detained Mr. Sledge for issuance of a citation.

*Sledge*, 2005 WL 2347247, at *14-16. The Eight Circuit affirmed this determination, stating:

The district court found it was undisputed Sledge tried to run away, and this finding is not clearly erroneous. Officers Smith and Clarke, as well as Carriker, testified Sledge tried to run away, and Sledge admitted on direct examination he "tried to get away from" Officer Clarke. Furthermore, we agree with the district court, the officers were engaged in "the enforcement of the penal law" during the encounter by detaining Sledge for issuance of a citation pursuant to the police broadcasts. Thus, by running away from the officers, Sledge committed a new, distinct crime, thereby permitting the officers lawfully to arrest him.

*Sledge*, 460 F.3d at 967.

-19-

The Eighth Circuit also found there was probable cause to arrest Sledge for resisting arrest after he was seized by Officer Kocian.  The Court of Appeals stated:

> Officer Smith testified he saw Sledge try to run away, and also saw Officer Clarke grab Sledge, resulting in "a struggle between Officer Clarke, Officer Kocian, and Mr. Sledge." Officer Smith then observed a third officer run over to the group, and testified the four individuals "went down to the ground in a pile." In describing Sledge's actions, Officer Clarke testified that during the encounter Sledge (1) "was yelling, screaming, upset and irate when he was arrested"; (2) made several threats after he was arrested and handcuffed; (3) "wasn't very cooperative in that he was moving his arms"; and (4) exhibited "resistive angry behavior." Carriker testified Sledge attempted to get away from the officers twice, and stated "the first time handcuffs were not used," but "[t]he second time, they were." On these facts, probable cause existed to believe Sledge was resisting arrest.  *See State v. Campbell,* 260 Neb. 1021, 620 N.W.2d 750, 757 (2001) (holding an arrestee who resists being handcuffed and struggles with officers may be convicted of resisting arrest under Nebraska law).

*Id.* (footnote omitted).

## CONCLUSION

Because of the outcome of the prior criminal case, Sledge is precluded from claiming in this § 1983 action that he was unlawfully arrested.  However, Sledge can pursue a claim that he was subjected to an unlawful pat-down search before his arrest; Clarke has not established that he is entitled to qualified immunity regarding such claim.  On Sledge's motion, claims that he was unlawfully detained and that Clarke gave false testimony in the criminal case will be dismissed.

Accordingly,

IT IS ORDERED that:

1.     Filing 28, the plaintiff's motion to dismiss the "first cause of action"
       (unlawful detention claim) and "fourth cause of action" (false testimony
       claim) of the plaintiff's amended complaint, is granted.

2.     Filing 25, the defendant's motion for summary judgment, is granted in
       part and denied in part, as follows:

       a.     The "third cause of action" (unlawful arrest claim) of the
              plaintiff's amended complaint is dismissed with prejudice.

       b.     In all other respects, the motion is denied.

January 19, 2010.                           BY THE COURT:

                                            *Richard G. Kopf*
                                            United States District Judge

---

        *This opinion may contain hyperlinks to other documents or Web sites.  The
U.S. District Court for the District of Nebraska does not endorse, recommend,
approve, or guarantee any third parties or the services or products they provide on
their Web sites.  Likewise, the court has no agreements with any of these third parties
or their Web sites.  The court accepts no responsibility for the availability or
functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or
directs the user to some other site does not affect the opinion of the court.